Ben Gipson (Bar No. CA 222830)
Ben.Gipson@dlapiper.com
Alexandria Cates (Bar No. CA 311163)
Alexandria.Cates@dlapiper.com
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4704
Tel:   310.595.3000
Fax:   310.595.3300

Attorneys for Defendant
FEVER LABS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB FOWLER, an individual,<br>                    Plaintiff,<br><br>          versus<br><br>FEVER LABS INC. a Delaware Corporation; BYRON THOMPSON, an individual; and DOES 1-100, inclusive,<br>                    Defendants. | Case No. [_____]<br><br>**DEFENDANT FEVER LABS, INC,'S NOTICE OF REMOVAL**<br><br>**[28 U.S.C. § 1332 and 1441(b)]**<br><br>[*Removed from the Los Angeles Superior Court, Case No. 20-ST-CV-38870*] |

Defendant Fever Labs, Inc. ("Defendant" or "Fever") hereby removes to this Court pursuant to 28 U.S.C. Sections § 1332 and 1441(b).   The grounds for this removal are set forth herein.

## SUMMARY OF ALLEGATIONS IN COMPLAINT AND BASIS FOR JURISDICTION

1.      On or about October 8, 2020, Plaintiff commenced this action in the Superior Court of California in and for the Los Angeles County by filing a complaint entitled *Jacob Fowler v. Fever Labs, Inc., a Delaware Corporation; Byron Thompson, an individual; and DOES 1 through 70*, inclusive, as Case No. 20STCV38870 ("Complaint").

2.      Plaintiff alleges discrimination, harassment, retaliation, failure to prevent discrimination, harassment, and retaliation, nonjob related inquiries in violation of FEHA, and retaliation in violation of the Labor Code.

3.      The Complaint was served on Fever's registered agent on or about October 13, 2020 (Declaration of Ignacio Bachiller ("Bachiller Dec." ¶ 4).  A true and correct copy of the Summons and Complaint is attached hereto as **Exhibit A**.

4.      The First Amended Complaint was served on November 11, 2020.  A true and correct copy of the First Amended Complaint is attached hereto as **Exhibit B.**

5.      Plaintiff has brought this action against Fever Labs, Inc. and an individual, Byron Thompson.

6.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 and 1441(b) based on diversity jurisdiction.  The state court action is properly removable to this Court in that it is a civil action between citizens of different states in which the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, as explained below. While Fever disputes the allegations of wrongdoing in the FAC and disputes that Plaintiff is entitled to relief in any amount from any

defendant, the amount in controversy requirement is satisfied because Plaintiff's FAC seeks relief in excess of $75,000.  *See* 28 U.S.C. § 1332(d)(2).

## BASIS FOR FEDERAL COURT JURISDICTION

### (a)   A Court May Disregard A Sham Defendant

7.     If a defendant is named for the purpose of destroying diversity the court "may ignore the presence of that defendant for the purpose of establishing diversity." *Salkin v. United Services Auto. Ass'n*, 2011 WL 554079, *2 (C.D. Cal. Jan. 28, 2011) (citation omitted).  A defendant named for that improper purpose is known as a "fraudulent defendant" or a "sham defendant" and defendants have the burden of showing that plaintiff "obviously fails" to state a claim against defendants to prove fraudulent joinder.  *Id.*; *see also Ritchey v. Upjohn Drug Co*., 139 F.3d 1313, 1318 (9th Cir. 1998); *McCabe v. General Foods Corp*., 811 F.2d 1336, 1339 (9th Cir. 1987).  The evidence that a court may consider in determining whether fraudulent joinder exists is anything ascertainable from the face of the complaint as well as any "facts presented by the parties at the time of removal." *Salkin*, 2011 WL 554079 at *6.

8.     The crux of Plaintiff's FAC concerns Fever's alleged discrimination and retaliation against Plaintiff and Fever's alleged failure to take steps to remedy the alleged discrimination and harassment.  Namely, Plaintiff alleges that Ed Gross and George Elkin, acting on behalf of Fever, engaged in discriminatory and retaliatory conduct.  Specifically, Plaintiff alleges that Ed Gross (Plaintiff's supervisor at the time) told Plaintiff that he wanted to assess how religious he was before he hired Plaintiff.  (FAC, ¶ 17.)   Plaintiff also alleges that George Elkin, Fever's General Manager based in New York (FAC, ¶ 24), made numerous harassing statements regarding Plaintiff's religion, denied his request for PTO based on his religion, placed Plaintiff on a performance improvement plan in retaliation for complaining about the alleged religious discrimination, and did nothing to investigate his complaints of alleged harassment and discrimination.  (*See* FAC, ¶¶ 30, 31, 36, 38, 39, 40, & 44).

1    Despite these factual allegations, Plaintiff does **not** name Mr. Gross or Mr. Elkin as
2    parties to his FAC.

3        9.    To defeat diversity of citizenship, Plaintiff alleges **one** cause of action
4    for harassment against his **co-worker** Byron Thompson. (FAC, ¶ 20). Aside from
5    conclusory statements that Thompson made general comments about Plaintiff's
6    Christian beliefs, the FAC only describes such conversations in adequate detail twice.
7    (FAC, ¶¶ 23, 46). Plaintiff does not allege (nor could he) that Mr. Thompson engaged
8    in any sort of retaliatory or discriminatory behalf on behalf of Fever.

9        10.    Plaintiffs' FAC thus manifests his intent to attempt to avoid federal
10   diversity jurisdiction, which was enacted to serve the important purpose of
11   "avoid[ing] the effects of prejudice against outsiders." *Industrial Tectonics, Inv. v.*
12   *Aero Alley*, 912 F.2d 1090, 1094 (1990). In order to protect the vitality of the oft-
13   skirted procedural mechanism, the Supreme Court has long called out and condemned
14   gamesmanship intended to circumvent it. *See, e.g., Wecker v. Nat'l Enameling &*
15   *Stamping Co.*, 204 U.S. 176, 188 (1907) (refusing to remand where the Court
16   concluded that the individual defendant was only named to prevent removal because
17   no legitimate claim was stated against him).

18       11.    This Court also has the authority to dismiss individual defendants *sua*
19   *sponte* when no viable claim is alleged against them. *See Salkin*, 2011 WL 554079,
20   at *6 (explaining that the court dismissed the fraudulently joined defendant *sua sponte*
21   even though the defendant did not file a motion to dismiss the fraudulently joined
22   defendant).

23       **(b)    Parties' Citizenship**

24       12.    There is complete diversity of citizenship because the operative parties,
25   Plaintiff, on the one hand, and Fever, on the other, are citizens of different states. The
26   individual defendant in this lawsuit does not destroy diversity because, as discussed
27   above, he should be disregarded as a sham defendant that qualifies under the
28   fraudulent joinder exception to complete diversity.

13.    Plaintiff worked in Los Angeles, California, at all relevant times, and there is no indication that he is a citizen of a state other than California.  (FAC, ¶ 4.)

14.    Plaintiff admits that Fever is a Delaware Corporation.  (FAC, ¶ 2.)

15.    Fever's principle place of business, at all relevant times, has been New York, which is the location of its headquarters; the location from which its high level officers work and direct, control, and coordinate its activities; where its policies and procedures are developed; and where its corporate functions take place.  (Bachiller Dec., ¶ 3).

16.    Any potential "DOE" defendants shall be disregarded for purposes of removal.  28 U.S.C. § 1441(a).  In addition, there are no allegations in the FAC with respect to the potential "DOE" defendants at all such that no clue is given as to their identity or relationship to the claims.  (FAC, ¶ 5.)

**(c)    Amount in Controversy**

17.    The amount in controversy between the parties exceeds the minimum sum of $75,000 set forth in 28 U.S.C. § 1332(a), exclusive of interest and costs.

18.    "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdiction threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 547 U.S. 81, 89 (2014).  Fever is not obliged to "research, state, and prove the plaintiff's claims for damages." *Singer v. State Farm Mut. Auto Ins. Co*., 116 F.3d 373, 377 (9th Cir. 1997); *Conrad Assoc. v. Hartford Accident & Indem. Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998).  Fever can establish the amount in controversy by the allegations in the FAC, or by setting forth facts in the notice of removal that demonstrate that the amount placed in controversy by Plaintiff exceeds the jurisdictional minimum. *Singe*r, 116 F.3d at 377; *Conrad Assoc*., 994 F. Supp. at 1198.  In other words, the Court may consider whether it is facially apparent from the FAC that the jurisdictional amount is in controversy. *Id.*  In addition to the contents of the removal petition, the Court considers "summary-judgment-type evidence relevant to the amount in controversy at the time of removal,"

such as affidavits or declarations.  *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *Singer*, 116 F.3d at 377.

19.    In measuring the amount in controversy, a court must assume that the allegations of the FAC are true and that a jury will return a verdict for Plaintiff on all claims made in the FAC.  *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002).  The ultimate inquiry is what amount is put "in controversy" by the FAC, not what the defendant will actually owe.  *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005).

20.    Here, although Plaintiff does not pray for a specific dollar amount, the FAC alleges claims for:  (1) discrimination, (2) harassment, (3) retaliation, (4) failure to prevent discrimination, retaliation, and harassment, (5) nonjob related inquiries in violation of FEHA, (6) retaliation in violation of the California Labor Code § 96.8, and (7) retaliation in violation of the California Labor Code § 1102.5.

21.    Plaintiff's FAC alleges that he was wrongfully terminated and the prayer for relief includes a request for back pay and front pay.  (FAC, p. 24).  At the time Plaintiff was terminated, he was earning a salary of approximately $4,615.38 per month, not including commissions.  (Bachiller Dec., ¶ 5).  Plaintiff was terminated on July 12, 2019, more than a year ago.  (FAC, ¶ 47.)  Thus, assuming Plaintiff worked through October 31, 2020 (approximately 15.5 months), Plaintiff could plausibly seek approximately $71,538.39 in back pay (excluding commissions).  This amount is calculated by the following:

(4,615.38 per month x 15 months) = $69,230.70 + (4,615.38/2) = $71,538.39.

22.    Plaintiff also requests penalties for violation of Labor Code § 1102.5, which states that an entity can be liable for a civil penalty of up to $10,000 for each violation of the section.  Thus, even assuming one violation, Plaintiff's compensatory damages and the $10,000 penalty establish that the amount in controversy exceeds $75,000.

23.    In addition to compensatory damages, Plaintiff seeks the following:

1      (a) <u>Emotional Distress Damages</u>.  Plaintiff requests emotional

2   distress damages.  (FAC ¶¶ 57, 70, 82, 92, 102, 118, 128, p. 24).   The emotional

3   distress component of Plaintiff's alleged damages must be considered in

4   determining whether the amount in controversy requirement has been established.

5   *See Kroske v. U.S. Bank Corp.*, 432 F. 3d 976, 980 (9th Cir. 2005) (holding that the

6   plaintiff's "emotional distress damages would add at least an additional $25,000 to

7   her claim," even where she had only $55,000 in lost wages, thus satisfying the

8   amount in controversy requirement "even without including a potential award of

9   attorney's fees").  A defendant may use damage awards in other cases to establish

10  that the amount in controversy exceeds $75,000.  *See Simmons v. PCR Tech*., 209 F.

11  Supp. 2d 1029, 1033–1034 (N.D. Cal. 2002).  Juries in California have awarded

12  well in excess of $75,000 for emotional distress damages in similar discrimination

13  and/or retaliation cases. *See, e.g., Hernandez v. Regents of the University of*

14  *California*, 2009 WL 6045700 (Sept. 2009) (a jury in Alameda County handed

15  down a $266,347 award for pain and suffering to a plaintiff-employee where the

16  plaintiff's employer wrongfully terminated her in retaliation for demanding

17  reasonable accommodations); *Clark vs. Sky Valley East LLC*, 2008 WL 5999660

18  (Oct. 2008) (a jury in Riverside County awarded $68,590 in economic damages and

19  $85,000 in non-economic damages to a plaintiff-employee who alleged she was

20  terminated because of her religion).  Thus, if Plaintiff is able to prove his claims at

21  trial, it is reasonable to conclude that Plaintiff will seek, and a jury may award, in

22  excess of $75,000 for emotional distress damages.  Accordingly, the amount in

23  controversy here clearly exceeds $75,000.

24     (b) <u>Punitive Damages</u>.  Plaintiff also seeks punitive damages.  (FAC

25  ¶¶ 59, 72, 84, 94, 104, p. 24).  Punitive damages should be considered when

26  determining the amount in controversy.  *See Anthony v. Security Pac. Fin'l Services,*

27  *Inc*., 75 F.3d 311, 315 (7th Cir. 1996) (punitive damages factored into amount in

28  controversy if they are recoverable under state law); *Simmons*, 209 F. Supp. 2d at

6
DEFENDANT FEVER'S NOTICE OF REMOVAL

1033 (recognizing that jury verdicts in other similar cases in California "amply demonstrate the potential for large punitive damage awards in employment discrimination cases."); *Wysinger v. Automobile Club of Southern California*, 157 Cal. App. 4th 413 (2007) (awarding $1 million in punitive damages for an employer's disability discrimination, failure to engage in the interactive process, and retaliation in violation of FEHA); *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128 (1998) (awarding $3,500,000 in punitive damages from the defendant employer for FEHA violations).

(c)     Attorneys' Fees. Plaintiff has also demanded attorneys' fees. (FAC ¶ 58, 71, 83, 93, 103, 119, 129, p. 25).  Attorneys' fees shall be awarded to a prevailing plaintiff in a FEHA action.  *See* Cal. Gov't Code § 12965(b); *see also Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) (where attorneys' fees are allowed by statute, they are considered as part of the amount in controversy calculation); *Muniz v. UPS*, 738 F.3d 214 (2013) (trial court awarded $697,972 in attorney fees in a single-plaintiff action for gender discrimination in violation of FEHA).  Counsel for Fever has defended numerous claims for alleged discrimination, retaliation, and harassment against corporate employers. (Gipson Dec., ¶ 2).  Counsel for Fever is familiar with damages claims made by plaintiffs and awarded by juries in California, as well as claims and awards for attorneys' fees. (*Id.*)  Based on that experience, discovery and settlement discussions consistently reveal that a typical plaintiff in such an action regularly seeks more than $75,000, particularly when attorneys' fees are taken into account. (*Id.*)

24.     Based on Plaintiff's claims, his prayer for relief and the undersigned counsel's previous experience, there is no question that the amount in controversy in this case exceeds $75,000.  *See e.g., Jackson v. American Bankers Ins. Co*., 976 F. Supp. 1450, 1454 (S.D. Ala. 1997) ("[t]he appropriate measure [of the amount in controversy] is the litigation value of the case assuming that the allegations of the complaint are true and assuming a jury returns a verdict for the plaintiff on all

claims made in the complaint"); *Kenneth Rothschild Trust*, 199 F. Supp. 2d at 1001 (amount in controversy is based on assumption that plaintiff prevails on all claims). *White v. FCI USA, Inc*., 319 F.3d 672, 675 (5th Cir. 2003) ("the lengthy list of compensatory and punitive damages sought by [the plaintiff], when combined with attorney's fees, would exceed $75,000").  Therefore, removal is appropriate and proper.

## COMPLIANCE WITH STATUTORY REQUIREMENTS FOR APPROVAL

25.     This Notice is timely filed under 28 U.S.C. § 1446(b) in that it is being filed within thirty days of October 13, 2020, the date Fever was served with the original complaint.  (Bachiller Dec., ¶ 4).

26.     This case may be removed to this Court under 28 U.S.C. § 1441(a) because the FAC was filed in the Superior Court of the State of California for the County of Los Angeles, which is within the Central District of California.

27.     Pursuant to 28 U.S.C. § 1446(a), Fever attaches as **Exhibit A** a true and correct copy of the Summons and Complaint.

28.     Fever attaches as **Exhibit B** a true and correct copy of the First Amended Complaint filed in this case.

29.     Fever attaches as **Exhibit C** a true and correct copy of Fever's Answer filed in this case.

30.     Fever attaches as **Exhibit D** a true and correct copy of the remainder of the state court case file.

31.     In accordance 28 U.S.C. § 1446(d), a Notice of Filing of Notice of Removal is being filed contemporaneously with the Clerk of the Superior Court of the State of California in and for the County of Los Angeles, and Fever will provide written notice of the filing of this Notice of Removal to counsel of record for Plaintiff.

32.     If any question arises as to the propriety of the removal of this action,

1    Fever respectfully requests the opportunity to present a brief, evidence, and oral

2    argument in support of its position that this case is removable.

3

4

5    Dated:  Thursday, November 12,     DLA PIPER LLP (US)
         2020

6                             *s/ Benjamin M. Gipson*

7                             Benjamin M. Gipson
                            Alexandria Cates

8

9                             Attorneys for Defendant
                            Fever Labs, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28